FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

2005 JUL 29  AM 10: 52

CLERK U.S. DISTRICT COURT
TAMPA, FLORIDA

CASE NO:

UNITED HEALTHCARE SERVICES,
INC., on its own behalf and on
behalf of health plans affiliated with
or administered by it,

$8:05-CV-1408-T-23TGW$

Plaintiff,

v.

ANALGESIC HEALTHCARE,

Defendant.

_____/

### COMPLAINT

COMES NOW, Plaintiff, United HealthCare Services, Inc., on its own behalf and on behalf of health plans affiliated with or administered by it (collectively "United"), by and through its undersigned attorneys, and hereby sues Defendant, Analgesic Healthcare ("Analgesic"), and states as follows:

### BACKGROUND

Analgesic systematically made false representations to United in health service reimbursement claim forms, and concealed the true nature of the usual and customary charges for the medical devices that Analgesic provided to Participants in United's health benefit plans.  By its conduct, Analgesic intended to induce and did cause United to pay $634,420.62 for products that were not covered by United's health benefit plans.  To remedy Analgesic's tortious and unlawful conduct, United seeks return of plan assets



LAW OFFICES OF
**STEVEN M. ZIEGLER, P.A.**
4000 HOLLYWOOD BOULEVARD • SUITE 375 SOUTH • HOLLYWOOD, FLORIDA 33021 • TELEPHONE (954) 966-2696

improperly obtained by Analgesic, compensatory damages, statutory treble damages, punitive damages, declaratory relief, prejudgment interest, costs and reasonable attorney's fees, and any such other relief as the Court deems appropriate.   United complains of Analgesic as follows:

1.     This is a claim for damages that exceeds $75,000.00 exclusive of interest, costs and attorney fees.

2.     United HealthCare Services, Inc. is a Minnesota corporation and maintains its headquarters and principal place of business in Minnetonka, Minnesota.   United is a national health and well-being company that provides management of health benefit plans and health insurance products throughout the country, including Florida, for millions of Americans.   United has no place of business in Florida but rather is a Citizen of Minnesota doing business in the state of Florida.

3.     Analgesic is a Florida Corporation with its principal place of business located at 7823 N. Dale Mabry Highway, Suite 202, Tampa, Florida 33614.   As such, Analgesic is a citizen of the state of Florida.

4.     This court has jurisdiction pursuant to 28 U.S.C.A. §1332 because the matter in controversy exceeds $75,000 exclusive of interest and costs and the dispute is between citizens of different States.

## ALLEGATIONS COMMON TO ALL COUNTS

5.     United's health benefit plans cover specific procedures and equipment and provides reimbursement to providers ("Providers") who render these services to individuals and their dependents ("Participants") who are enrolled in United's health benefit plans.

2

6.     At all times relevant hereto United administered health benefit plans for self funded and fully insured health plans in all 50 states including Florida.   United offers participants in its benefits plans the choice of utilizing participating providers or non-participating providers.  Participating providers are those health care providers who have contracted to provide specific services to participants pursuant to a fee schedule. Participating providers are paid directly for services rendered to participants.  Participants that utilize participating providers have no claim forms to fill out, but may be subject to copayments, coinsurance and/or deductibles, depending upon the terms of their health benefit plan.

7.     Participants that utilize non-contracted, non-participating, providers are responsible for paying the provider out of his or her own pocket and then submitting a claim form to United for reimbursement for the payment that he or she made.  In turn, the participant is then reimbursed the "Eligible Expense", less the deductible and coinsurance collected by the provider.     Some plans allow the Participant to assign payment of the claim to the provider.

8.     By contract with its participants, United requires that each participant satisfy his or her deductible and coinsurance obligation before United is obligated to pay benefits.

9.     Participants are encouraged to use contracted providers because the cost of health benefits is predictable.  Non-contracted providers are not constrained by an agreed fee schedule but rather bill their usual and customary charges that more often than not are higher than the fee schedule.

3

10.    In a typical contract with its participants, benefits are paid for services and supplies using a system of copayments, coinsurance and deductibles.    Participants are required to share in the higher cost of services and supplies provided by non-participating providers via the coinsurance and deductible requirements.   This means the participant remains responsible for the charges that are billed by the non-participating provider that are higher than the usual and customary charge that United pays to a contracted provider.

11.    A copayment is a charge that is required by the health benefit plan to be paid by the patient to the provider of service.  It may be a flat fee for all services or may vary depending upon the type of service.

12.    A deductible is the amount the participant pays for Covered Health Services in a Plan year, before they are eligible to receive Benefits.  It typically does not include the copayments made by the participant.

13.    Coinsurance refers to the portion of a covered expense that the participant pays after having satisfied the deductible. For example, if United pays 80% of certain covered expenses, the coinsurance for these expenses is 20%.

14.    Payment for services provided by non-participating providers is calculated as follows:  first the participant must meet their deductible; second, after the deductible is met, the participant is reimbursed for eligible expenses or covered services, or the actual billed charges, whichever is less; finally, the participant is required to pay the balance (defined as the "coinsurance") and any and charges above the reasonable and customary amount.

4

15.    By contract with its participants United is only obligated to pay the usual, reasonable and customary  charges that exceed the deductible and coinsurance and under no circumstances is United obligated to pay any benefits for any service or supply for which the participant has no financial responsibility – for example, if a provider waives the participant's financial obligations in the form of the copayment, coinsurance, or deductible

16.    Analgesic holds itself out to be a healthcare equipment provider that provides various electro- medical therapy devices to physicians who then, in turn, provide the devices to their patients/United's participants.  Defendant's Website markets a physician "electro-medical program that builds [a physician's] practice and increases customer referrals."  The Website further provides that:[1]

> "Analgesic Healthcare's Electro-medical Device Program is a special partnership that makes it easy to add electro-medical devices such as TENS and Microcurrent to your practice. You simply prescribe electro-medical therapy when indicated, and we do the rest.
>
> **Here's how it works:**
> - You receive TENS, Microcurrent or Muscle Stimulator units on consignment
> - You fit units, then fax or mail the Patient Data Card and Letter of Medical of Necessity
> - Analgesic Healthcare takes assignment on insurance
> - We contact the patient to answer any questions
> - We encourage your patients to see you for your continued evaluation
> - Analgesic's Electro-Medical Device Program provides you with a convenient, no-cost way to build your practice."

---

[1] www.analgesichealthcare.com as of July 18, 2005.

5

17.     Analgesic does not treat patients or have any physical contact with them. Rather, Analgesic markets the aforedescribed electro-medical device "program" to physicians, primarily chiropractic physicians. The chiropractors, in turn, are induced to provide the devices to patients to "build their practice" as per the website marketing. Analgesic then bills for a "set up" or "calibration fee" for each device followed by a monthly "rental fee." Analgesic also bills for allegedly shipping monthly "supplies" to the patient that include replacement "lead wires", electrode pads and alcohol swabs, none of which are actually ordered by the physician or the patient.

18.     Analgesic is a non-contracted/non-participating provider to United and its participants. Consequently, United's participants that receive services or supplies from Analgesic are required to satisfy the aforedescribed deductible and coinsurance.

19.     Non-participating providers of services to Participants like Analgesic may seek reimbursement from United for covered procedures, if the Participant assigns the claim, by submitting a health service claim form to United indicating the procedure or equipment provided and their usual and customary charges for the services. United then determines the amount of reimbursement to the Provider, if any, by considering the cost of the procedure as reflected by the usual and customary charge and whether it was covered under the Participant's plan. Reimbursement is then made to the provider minus the applicable deductible and coinsurance. These amounts remain the responsibility of the participant and are clearly communicated to the provider who, in turn, is then obligated to collect them from the participant.

6

20.     If the provider never has any intention of collecting the patient's financial obligation then there is no obligation on the part of United to pay benefits for any portion of the claim.  Furthermore, if the provider never has any intention of collecting the patient's financial obligation then the submitted charges should be reduced accordingly.  Failure to do so is a misrepresentation of the charges.

21.     At all times relevant hereto Analgesic billed United an amount that it represented to be its usual and customary charges for the aforedescribed services and supplies.  Analgesic was aware that United would reimburse it for only a portion of these charges and that Analgesic would be responsible for collecting the balance from the patient.  Analgesic desired, however, to promote the aforementioned device marketing program to induce chiropractors to dispense its devices to their patients.  Analgesic's motive was that the more devices it was able to get into patient's homes, the more it was able to bill for inflated monthly "rental" fees and for the alleged delivery of supplies. In order to facilitate this program it was necessary for Analgesic to remove any barriers to the widespread distribution of their devices to patients.  One such barrier was the patient financial obligation; attempting to collect from the patient would tend to cause patients to reject acceptance of a device for which they may have reconsidered the need, if they knowingly were required to incur a cost.

22.     Consequently, Analgesic did not charge or seek to collect from the patient but rather waived all patient financial obligation.  Analgesic, however, did not disclose this practice to United.  To the contrary, Analgesic artificially inflated the amount that it represented to United as its "usual and customary" charge, which was intended to, and had

7

the result of, inducing United to pay more than the usual and customary amount for the services and supplies. This was an intentional deception by Analgesic, which knowingly calculated the portion that United would pay and manipulated their billing to obtain a larger payment from United than what they were entitled to, specifically to offset the "loss" that they were incurring by not billing the patient for his or her financial obligation.

23.    Analgesic intentionally concealed this deception from United, including the fact that it was not collecting the patient financial obligation and that it was also misrepresenting its usual and customary charge.  This allowed Analgesic, through its physician and chiropractic physician partners, to distribute its "medical devices" to many patients that otherwise would have turned them down.  Once it got its device into the patient's home Analgesic then systematically overbilled United for fraudulently inflated monthly rental fees that far exceeded any reasonable value for the service or supply. Analgesic also billed United for allegedly shipping supplies on a monthly basis that were not even ordered by the physician or patient and the actual provision of which Analgesic has never been able to produce evidence to support.

24.    However, from February through July 2002, United conducted an investigation that revealed that Analgesic was not collecting the deductible or coinsurance from United's participants.  In fact, United subsequently learned that Analgesic had a policy of "waiving" the enrollee's financial obligations, in the form of the coinsurance and deductible, as a means of inducing demand.

25.    By contract with its participants, United is not obligated to pay benefits for any service or supply for which the participant has no financial responsibility.  By waiving

8

all patient financial responsibility, Analgesic has wrongfully induced United to pay it hundreds of thousands of dollars for services and supplies that were not covered benefits under any benefit agreement.

26.     Additionally, by contract with its participants, United is not obligated to pay benefits for any service or supply unless, and until, the participant first meets his or her deductible. United communicated the participant's deductible and coinsurance obligation to Analgesic each time it paid a claim and Analgesic induced United into believing that it was collecting the deductible. However, because Analgesic did not seek to collect from the participant, Analgesic induced United to erroneously credit the participant's deductible and to then pay benefits when none were due.

27.     Furthermore, under most contracts with its participants, after the deductible is met, the participant is responsible for a coinsurance, calculated as a percentage of the usual and customary charges. Because Analgesic did not collect, but rather "waived," the participant's coinsurance, this again induced United to pay benefits when none were due.

28.     Moreover, Analgesic never intended to collect the coinsurance and deductible, but rather intended to accept the payment from United as payment in full. Consequently, Analgesic misrepresented its billed charges as its "usual and customary charges" when, in fact, it was routinely accepting less than it billed as "payment in full."

29.     Analgesic wrongfully inflated, overstated, and misrepresented its "usual and customary" charges to compensate for the fact that it was wrongfully waiving the financial contribution and obligations of United's participants.

9

30.    Analgesic wrongfully "waived" the contractual obligations of United's participants and engaged in this deceptive billing practice to foster and maintain artificial "demand" for its medical devices to facilitate the program that it markets to physicians. Specifically, Analgesic intended to, and accomplished, the widespread distribution of its devices to patients that would otherwise have turned them down by waiving all financial barriers to effectuate a monthly "rental" scheme whereby it profited enormously through inflated monthly "rentals" and distribution of unnecessary supplies all of which was underwritten by the fraudulently inflated charges to United.

31.    United relied upon Defendant's misrepresented bills with the expectation that Analgesic was billing its usual and customary charges and then collecting the coinsurance and deductible from the participant.  Analgesic intentionally misrepresented these bills to induce United to rely upon them and United did so to its detriment by paying for services and supplies that were not covered benefits and by paying greater than what was Analgesic's actual usual and customary charge.

32.    By intentionally and wrongfully concealing the aforedescribed scheme from United, Analgesic not only induced United to make overpayments but wrongfully concealed any and all causes of action until United discovered the misrepresentations through a special investigation in February through July 2002.   Without the special investigation United had no knowledge of, or means to identify the misrepresentations made by the Defendant.

33.    By correspondence dated May 12, 2003 United made a demand for refund of an overpayment of benefits in the amount of $448,908.47.  However, as of October 30,

LAW OFFICES OF
**STEVEN M. ZIEGLER, P.A.**
4000 HOLLYWOOD BOULEVARD • SUITE 375 SOUTH • HOLLYWOOD, FLORIDA 33021 • TELEPHONE (954) 966-2696

2003 United had identified another $185,512.15.  Consequently, by correspondence dated October 30, 2003 United demanded a refund in the amount of $634,420.62.

34.   To date, Analgesic has wrongfully retained these amounts that it has wrongfully obtained from United and has failed and refused to refund these overpayments.

## COUNT I
## FRAUD

35.   United realleges and incorporates by reference herein the allegations contained in Paragraphs 1-34 above as if fully set forth herein.

36.   United's participants are responsible for payment of a deductible before United is obligated to pay benefits.  Subsequently, United's participants are responsible to pay a coinsurance equal to a percentage of the usual and customary charges.

37.   Both the deductible and coinsurance are calculated in reliance upon the billed charges submitted on the claim form submitted to United by Analgesic as being its usual and customary charge.

38.   By signing and submitting the claim form to United, Analgesic certified that the statements and representations made therein were true and accurate and not false, incomplete or misleading.

39.   By accepting the reduced payment by United as payment in full, and not collecting the deductible or coinsurance, Analgesic induced United to pay for services and supplies that were not covered benefits.

11

40.    By accepting the reduced payment by United as payment in full and not collecting the deductible or coinsurance Analgesic misrepresented and overstated its usual and customary charges.  Analgesic should have reduced the amount of its bill by the amount of the deductible and coinsurance that it never intended to collect to accurately reflect its true usual and customary charge.

41.    §817.234, Florida Statutes, makes it a felony crime to commit insurance fraud like that committed by Analgesic as set forth herein including the making of any false, incomplete or misleading information in connection with a claim for payment that Analgesic knows to be false, incomplete or misleading.  It is also a crime to knowingly conceal information concerning a material fact supporting the application for payment of a claim.

42.    Furthermore, in 2003, the Florida Legislature sanctioned the actions of Analgesic herein as felony insurance fraud by engaging in a general business practice of billing amounts as its usual and customary charges if the provider intends to waive deductibles or copayments or does not for any other reason intend to collect the total amount of the billed charges.   §817.234(7)(a), Florida Statutes.  On information and belief, Analgesic admitted its previous wrongful conduct by changing its  practices only after the Legislature amended the Act and currently alleges that it collects both the coinsurance and deductible.

43.    Analgesic made the aforedescribed misrepresentations to United with the intent of waiving the deductible and copayment requirement but concealed this fraudulent intent from United.  As a result, Analgesic misrepresented its usual and customary charges.

12

44.     Analgesic made these misrepresentations with the knowledge of their falsity and with the intention of inducing United to rely upon them by paying benefits for the services and supplies.

45.     United did reasonably rely upon these misrepresentations to its detriment by paying for the services and supplies.

46.     After it became aware that it had paid benefits over and above the amount that the participants were entitled United informed Analgesic of the overpayment and demanded a refund.

47.     As the result of Defendant's misrepresentations United has been compelled to retain the undersigned attorneys.

WHEREFORE, United prays for an award against Analgesic for:

a)  Damages in excess of $75,000.00;

b)  Attorney fees and costs;

c)  Pre and Post-Judgment Interest; and,

d)  Such other and further relief as this Honorable Court may deem just and proper.


## COUNT II
## UNJUST ENRICHMENT

48.     United realleges and incorporates by reference herein the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

49.     By paying the claims wrongfully submitted by Analgesic as set forth in Paragraphs 1-46 United unwittingly conferred a benefit upon Analgesic to which Analgesic

13

was not entitled.   Analgesic understood, appreciated and, in fact, intended the unjust benefit that was conferred upon it by United and Analgesic knowingly accepted and retained this wrongfully obtained benefit.

50.     Analgesic knowingly accepted and retained the wrongfully obtained benefit from United under circumstances that make it inequitable for Analgesic to retain the benefit, thus resulting in unjust enrichment to Analgesic to the wrongful detriment of United.

51.     As a result of Defendant's knowing and intentional acceptance and retention of the wrongfully obtained benefit, Analgesic has been unjustly enriched and United has suffered damages.

52.     As the result of Defendant's unjust enrichment to United's detriment, United has been compelled to retain the undersigned attorneys to sue Defendant.

WHEREFORE, United prays for an award against Analgesic for:

a) Damages in excess of $75,000.00;

b) Attorney fees and costs;

c) Pre and Post-Judgment Interest; and,

d) Such other and further relief as this Honorable Court may deem just and proper.

## COUNT III
## BREACH OF IMPLIED CONTRACT

53.     United realleges and incorporates by reference herein the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

14

54.     United did not have a written contract with Defendant.  However, Analgesic submitted claims to United purporting to have rendered services and United paid the claims in reliance upon the representations made therein.  As such, an implied contract arose with respect to each claim submitted and paid and it is presumed that the rate of payment by United for such services would be the usual and customary value of the services.

55.     Absent a written contract, the usual and customary value for the services at issue is established by the amount that Analgesic routinely accepted as payment in full.  In this case, Analgesic charged and was paid substantially more than was usual and customary for the services rendered in violation and breach of the implied contract.

56.     In fact, misrepresentation of its billed charges as usual and customary, when Analgesic intended to accept far less as payment in full, was a breach of the implied contract.

57.     As a result of Defendant's violation and breach of the implied contract, United has suffered damages.

58.     As the result of Defendant's violation and breach of the implied contract, United has been compelled to retain the undersigned attorneys to sue Defendant.

WHEREFORE, United prays for an award against Analgesic for:

a)  Damages in excess of $75,000.00;

b)  Attorney fees and costs;

c)  Pre and Post-Judgment Interest; and,

15

d) Such other and further relief as this Honorable Court may deem just and proper.

## COUNT IV
## VIOLATION OF THE FLORIDA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT, § 501.201, et seq., FLORIDA STATUTES

59. United realleges and incorporates by reference herein the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

60. Defendant's submission of claims for reimbursement to United is "trade or commerce" within the meaning of § 501.203, Florida Statutes.

61. The provisions of the Florida Unfair and Deceptive Trade Practices Act apply to all unfair and deceptive acts or practices in the conduct of any trade.

62. The actions of Analgesic as set forth in Paragraphs 1-46 have caused and continue to cause damages to United and the public and offend established public policy and constitute practices that are immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers.

63. The actions of Defendant, as set forth in Paragraphs 1-46, constitute unfair and deceptive trade practices as set forth by § 501.204, Florida Statutes.

64. As a result of Defendant's unfair and deceptive trade practices, United has suffered and continues to suffer damages.

65. As the result of Analgesic's unfair and deceptive trade practices, United has been compelled to retain the undersigned attorneys to sue Analgesic and United is entitled to recover reasonable attorney's fees pursuant to §501.2105, Florida Statutes.

WHEREFORE, United prays for an award against Analgesic for:

16

e)   Damages in excess of $75,000.00;

f)   Attorney fees and costs;

g)   Pre and Post-Judgment Interest; and,

h)   Such other and further relief as this Honorable Court may deem just and proper.

## COUNT V
## CIVIL THEFT

66.   United realleges and incorporates by reference herein the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

67.   By engaging in the activity set forth in Paragraphs 1-46, Analgesic knowingly and intentionally engaged in a course of conduct that took advantage of the manner in which United paid claims by obtaining payment of benefits under circumstances where it knew that benefits were not payable.

68.   By engaging in the activity set forth in Paragraphs 1-46, Analgesic knowingly and intentionally engaged in a course of conduct that took advantage of the manner in which United paid claims by obtaining payment that was far greater than its usual and customary charges or any amount to which it was otherwise entitled to receive.

69.   The amount that Analgesic wrongfully obtained from United was $634,420.62.   As a result, Analgesic has committed Civil Theft against United in the amount of $634,420.62. within the meaning of §§772.11 and 812.014, Fla. Stat.

70.   As set forth in paragraphs 1-46, Analgesic accomplished this theft by fraudulently representing its charges and concealing the fact that it was not collecting the

17

coinsurance or deductible. Analgesic was fully aware of the manner in which United calculated its payment of benefits and Analgesic inflated and misrepresented its usual and customary charges to compensate for the fact that it was simultaneously "waiving" the financial obligations of the participant.

71.     Analgesic intentionally made these false representations to United on more than two occasions with the felonious intent of unlawfully and permanently depriving United of money that belonged to United and to which Analgesic was not entitled.

72.     By engaging in the actions set forth in paragraphs 1-46, Analgesic knowingly and intentionally endeavored to obtain, and did obtain, the property of United with the intent to deprive United of the right or benefit of the property and to appropriate the property to its own use and benefit to which it was not entitled. Consequently, United has been deprived of the use and benefit of its property in the amount of $634,420.62.

73.     United has made its written demand upon Analgesic for treble damages in the amount of $1,903,261.80. To date, Analgesic has failed and refused to comply with this demand.

74.     As the result of Defendant's civil theft, United has been compelled to retain the undersigned attorneys to sue Analgesic and United is entitled to recover treble damages and reasonable attorney's fees.

WHEREFORE, United prays for an award against Analgesic for:

a)     Damages in excess of $75,000.00;

b)     Treble Damages;

18

c)      Attorney fees and costs;

d)      Pre and Post-Judgment Interest; and,

e)      Such other and further relief as this Honorable Court may deem just and proper.

## COUNT VI
## INTERFERENCE WITH CONTRACTUAL RELATIONS

75.     United realleges and incorporates by reference herein the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

76.     The failure of a participant to actually satisfy his or her deductible prior to the payment of benefits is a breach of the contract between United and the participant. Similarly, the failure of a participant to pay his or her coinsurance also constitutes a breach of contract.

77.     On information and belief Analgesic was aware of the participant's contractual deductible and coinsurance requirements.  Analgesic was made aware of the amount of the enrollee's deductible and coinsurance requirement every time that United paid a claim.

78.     However, Analgesic wrongfully, and without right or justification, interfered with the performance of United's contracts with its participants by not charging or collecting or otherwise waiving the contractually required deductible and coinsurance. Furthermore, Analgesic intentionally concealed this interference from United.

79.     By its conduct, Analgesic caused United to pay benefits in an amount in excess of the amount required by the terms and conditions of its contracts with its

19

participants.  Analgesic engaged in this conduct with the knowledge and specific intention of interfering with United's contractual relationship with its participants to facilitate Defendant's aforedescribed marketing program but to the knowing and intentional detriment to United.

80.    As the result of Defendant's interference with contractual relations, United has been compelled to retain the undersigned attorneys to sue Defendant.

WHEREFORE, United prays for an award against Analgesic for:

f)    Damages in excess of $75,000.00;

g)    Treble Damages;

h)    Attorney fees and costs;

i)    Pre and Post-Judgment Interest; and,

j)    Such other and further relief as this Honorable Court may deem just and proper.

## VII
## CONVERSION

81.    United realleges and incorporates by reference herein the allegations contained in Paragraphs 1-46 above as if fully set forth herein.

82.    By engaging in the activity as set forth in paragraphs 1-46 herein Analgesic did wrongfully convert to Defendant's own use the amount of $634,420.62 that was then the rightful property of United.

83.    As the result of Defendant's unlawful conversion, United has been compelled to retain the undersigned attorneys to sue Defendant.

LAW OFFICES OF
STEVEN M. ZIEGLER, P.A.
4000 HOLLYWOOD BOULEVARD • SUITE 375 SOUTH • HOLLYWOOD, FLORIDA 33021 • TELEPHONE (954) 966-2696

WHEREFORE, United prays for an award against Analgesic for:

k)      Damages in excess of $75,000.00;

l)      Treble Damages;

m)      Attorney fees and costs;

n)      Pre and Post-Judgment Interest; and,

o)      Such other and further relief as this Honorable Court may deem just and proper.

## DEMAND

ACCORDINGLY, United HealthCare Services, Inc., requests this Honorable Court enter its Order granting it the following damages or relief against Defendant.

a)  Damages in excess of $75,000.00;

b)  Treble Damages;

c)  Attorney fees and costs;

d)  Pre and Post-Judgment Interest; and,

e)  Such other and further relief as this Honorable Court may deem just and proper.

21

## REQUEST FOR JURY TRIAL

Plaintiff, United HealthCare Services, Inc., hereby requests trial by jury on all issues so triable.

Respectfully submitted,

Law Offices of
Steven M. Ziegler, P.A.
Attorneys for United
4000 Hollywood Boulevard
Suite 375 South, Presidential Circle
Hollywood, Florida  33021
Tel: (954) 966-2696;
Fax: (954) 966-2446

By: _____
　　　 **DAVID J. ARMSTRONG**
　　　 **FLA. BAR NO. 0480053**

22